NO. 07-11-0328-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

APRIL 9, 2012
_____

AUSTIN CHASE CARRASCO,

Appellant

v.

THE STATE OF TEXAS,

Appellee
_____

FROM THE 181ST DISTRICT COURT OF RANDALL COUNTY;

NO. 22,384-B; HONORABLE JOHN B. BOARD, PRESIDING
_____

*Memorandum Opinion*
_____

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

Austin Chase Carrasco appeals his conviction of assault by strangulation and contends that 1) the trial court erred in denying him an instruction on the defense of property, and 2) the evidence was insufficient to support the conviction. We affirm the judgment.

*Background*

Appellant and the complainant, Danielle Wilcox, were living together in a trailer house in a rural area. After spending the evening of April 10, 2010, at several bars,

they returned home. However, appellant became angry because Wilcox received a telephone call from a man she had previously dated. Appellant and Wilcox argued, after which she informed him that she wanted to leave. As she was packing her belongings, appellant grabbed her property and a mattress and threw them outside of the trailer. He also took Wilcox' car keys. Wilcox called 911, and when law enforcement arrived, appellant ran away. Wilcox declined the deputy's offer of transportation because she wanted to stay to search for her car keys and secure her vehicle. However, she informed the deputies that appellant had marijuana in the trailer. They confiscated the marijuana and left.

When appellant returned home, Wilcox asked him for her car keys. Appellant informed her he did not have them, became angry that his marijuana was gone, and asked her where it was. Then, he pushed her down the hall and into a bedroom, pinned her back to the floor, said "'if I'm going to the pen it is going to be worth it,'" wrapped his hands around her neck, and applied pressure for approximately a minute. When asked if she could breath while appellant's hands were around her throat, she replied, "for the majority of the time . . . . " Appellant eventually released his grasp on her neck, grabbed her hair, and threw her out of the trailer. Thereafter, she sat outside until one of the deputies who had been at the trailer earlier drove by.

The deputy stopped upon seeing Wilcox and approached her. He observed her to be distraught and sobbing. She also had "red marks that appeared to me like fingers or such around her neck," according to the deputy.

*Issue 1 – Defense of Property Instruction*

Because there was evidence that Wilcox was no longer welcome in the trailer when appellant began throwing her property out the door, he believed himself entitled to an instruction on the defense protecting property. We disagree and overrule the issue.

Section 9.41 of the Texas Penal Code states that a person in lawful possession of land or tangible movable property "is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to prevent or terminate the other's trespass on the land or unlawful interference with the property." TEX. PENAL CODE ANN. §9.41(a) (West 2011). By invoking the foregoing defense, appellant asks us to conclude that there existed some evidence upon which a rational jury could reasonably deduce that he "reasonably believe[d]" that pinning Wilcox to the ground and squeezing her neck while atop her was immediately necessary to prevent or terminate her trespass upon his property.

In determining the legitimacy of appellant's request, we assume *arguendo* that there was evidence he was in lawful possession of the trailer home when he 1) began his assault upon Wilcox and 2) decided to make his trip "to the pen . . . worth it." We acknowledge that by then he had thrown items of property belonging to her out the door. Such could indicate that she was no longer welcome and was possibly trespassing. But, that alone did not invest him with the right to the instruction. As required by §9.41, there must also exist of record some evidence that appellant "reasonably believed" force was immediately necessary to prevent or terminate the trespass. And, therein lies the problem here. Appellant cites us to no such evidence. Nor did we find any.

Instead, what we found of record was evidence that before appellant placed his hands around his victim's throat, Wilcox had already expressed her desire to go. But, appellant had taken the keys to her vehicle. Furthermore, it was nightime, and the trailer was in a rural area. Moreover, after he denied having the keys and she demanded that he "find them," he directed her to find them herself. That, at the very least, evinces an implicit invitation for her to remain on the property so that she can conduct her search. To that, we add appellant's conduct. He did not lead her outside or to a door through which she could go outside.

Instead, appellant shoved her away from the avenue of egress, through the trailer's hall, and into the bedroom. There, he sat atop her, grasped her throat and began squeezing for approximately a minute. It is farfetched to suggest that a rational juror could reasonably interpret the act of pulling someone deeper into the bowels of an abode to commit an assault as effort to terminate a trespass or otherwise remove the trespasser. *See Hudson v. State,* 145 S.W.3d 323, 325 (Tex. App.–Fort Worth 2004, pet. ref'd) (finding no evidence of a belief that force was needed to defend the defendant's property when there was no evidence the other person intended to remain on the property or damage it and the defendant grabbed the window of the other person's truck to prevent him from leaving). And, when his own words about making a trip to the "pen" be "worth it" are included in the mix, a rational juror could only interpret his use of force as a desire to retaliate against or punish Wilcox for the seizure.

Nor do we find evidence of record suggesting in any way that one in appellant's position would reasonably believe the degree of force utilized was immediately necessary. Appellant was taller than Wilcox and no doubt stronger given that each

4

shove exerted by him resulted in her repeatedly falling to the floor. There is no evidence that she had or used a weapon against him in effort to remain in the trailer. Nor is there evidence that she attempted to exert any type of physical force to remain on the property. So, even if Wilcox had become a trespasser, nothing of record would have entitled a jury to rationally conclude that he thought himself justified in forcing the female to the ground and choking her to get her to leave.

Simply put, no evidence appears of record which would have enabled a fact finder to reasonably conclude that a person in appellant's position would or could reasonably believe assaulting a female in the manner undertaken here was immediately necessary to prevent or terminate a trespass. So, the trial court was not obligated to submit the instruction. Nor can we see any harm arising from the decision not to submit the instruction. *See* TEX. R. APP. P. 44.2 (requiring the presence of harm before error is reversible). Nothing of record suggests the absence of the instruction in any way contributed to or otherwise impacted the verdict reached or punishment levied.

*Sufficiency of the Evidence*

Next, appellant challenges the sufficiency of the evidence underlying the guilty verdict. We overrule the issue.

The offense of assault by strangulation occurs by an accused "intentionally, knowingly, or recklessly impeding the normal breathing or circulation of the blood of the person by applying pressure to the person's throat or neck or by blocking the person's nose or mouth." TEX. PENAL CODE ANN. §22.01(b)(2)(B) (West 2011). According to appellant, there is no evidence that his applying pressure to Wilcox' throat impeded her normal breathing or blood circulation. In making that observation, however, he cites us

5

to no authority suggesting that one's breathing must be completely stopped for it to be impeded. Nor were we provided authority indicating that effort to impede the normal circulation of blood must result in unconsciousness, as appellant tends to insinuate.

Indeed, the idea of impeding connotes interference or hinderance. *See* MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 623 (11th ed. 2003) (so defining the word). With that in mind, we note Wilcox' statement that she was able to breath for a "majority" of the time. Nowhere did she state that she was able to breath throughout the entire episode. So, that is some evidence that the pressure applied by appellant to her throat obstructed or hindered her breathing at one point, though not throughout the choking episode. To that, we add the evidence of red and white marks appearing "as fingers" around her neck. According to medical testimony presented at trial, such marks evinced the presence of "burst" capillaries where the pressure was applied. It also illustrated that pressure caused blood to "escape" the area. A rational jury could reasonably infer that the application of force sufficient to erupt blood vessels or capillaries and cause blood to escape tissue interfered with or hindered the *normal* circulation of the blood, as required by the statute.

In short, there is some evidence supporting the jury's verdict that each element of the crime at issue was proven beyond reasonable doubt. So, we must reject appellant's argument to the contrary.

Accordingly, the judgment is affirmed.


Brian Quinn
Chief Justice

Do not publish.